[Nos. 20918–3–I; 20968–0–I. Division One. January 17, 1989.]

LORELEI P. STEVENS, *Appellant,* v. SECURITY PACIFIC MORTGAGE CORPORATION, ET AL, *Respondents.*

LORELEI P. STEVENS, *Respondent,* v. SECURITY PACIFIC MORTGAGE CORPORATION, *Respondent,* ADVANCE MORTGAGE CORPORATION, *Appellant.*

*Robert H. Stevenson,* for Stevens.

*Richard C. Coyle, Constance M. Jones, Perkins Coie,* and *William H. Grady,* for appellant Advance Mortgage Corp.

*David Spencer, Charles F. Vulliet,* and *Stoel, Rives, Boley, Jones & Grey,* for respondent Security Pacific Mortgage Corp.

*Michael D. Bohannon, Robert B. Leslie,* and *Hatch & Leslie,* for respondent Westinghouse Credit Corp.

SCHOLFIELD, J.—The plaintiff, Lorelei Stevens, appeals the dismissal of her usury claims. She also seeks reversal of defendant Westinghouse's judgment against her on the loan, which it purchased from the lender, Security Pacific. Security Pacific seeks reversal of Westinghouse's judgment against it for breach of contract and also seeks judgment for contractual attorney's fees from Westinghouse, and judgment against Stevens for its costs and attorney's fees. Security Pacific also seeks damages and attorney's fees against Advance, who prepared the loan. Advance seeks reversal of Security Pacific's judgment against it for indemnity, while Westinghouse seeks judgment against Security Pacific for its costs and attorney's fees. We affirm.

### FACTS

The plaintiff Stevens is president and owner of Wall Street Brokers in Seattle. Wall Street Brokers is engaged in purchasing and reselling at a profit seller–financed notes and real estate contracts.

In 1977, Stevens bought a residential lot in Seattle. She then borrowed various sums at high interest rates from 21 people, most of whom were business acquaintances, to finance construction of a home. In 1981, when the house was approximately 80 percent complete, she approached Dan Halligan, a loan officer at Advance Mortgage Corporation, to obtain a home mortgage loan.

Acting as Advance's agent, Halligan obtained the information necessary to complete a loan application for Stevens, including verification of borrower's income, assets, liabilities, and employment, appraisal of the residence, and purpose of the loan. In June 1981, Advance loaned Stevens $164,000 secured by a first deed of trust on the Stevens residence.

Prior to receiving the $164,000, Stevens obtained, without payment, satisfactions of the mortgage liens held by her

private lenders to clear title and place the Advance deed of trust in first position. After receiving the $164,000, Stevens still had unpaid obligations to some of her private lenders, and she rerecorded their mortgages against the property. She continued to incur costs and debts in connection with the residence. In December 1981, she decided to obtain a second loan and again contacted Halligan at Advance.

Halligan and Stevens discussed the purpose of the second loan. Stevens told Halligan she needed the loan for expenses incurred in connection with the construction of the residence. The court made a finding that Halligan, aware of lenders' concerns with usury at that time because of extraordinarily high interest rates then prevailing, told Stevens that she would have to certify that the loan was for business purposes. Halligan stated in his deposition that he does not recall the purpose of the second loan to Stevens. However, the trial court found that Halligan was fully aware of Stevens' intended use of the proceeds of the second loan.

Notwithstanding his awareness of the intended purpose, Halligan prepared a second loan application for Stevens as a business or commercial loan to be secured by her residence. Halligan did so knowing that Advance would not make the loan, but that it would be "brokered" to another lender; that is, Advance would prepare a complete loan package and submit it to another lender which would fund the loan. As he had with the Advance loan of $164,000, Halligan obtained the information necessary to compile the loan package, including verification of Stevens' income, assets, liabilities and employment, and an appraisal of the residence. The information obtained for the second loan package was based primarily upon information obtained from Stevens. The loan application prepared by Stevens and Advance stated that it was for investment purposes. Stevens' liabilities were also incorrectly stated as relating to her business, and the cost of the property was understated by at least $50,000.

The second package was for a loan of $125,000 at 18½ percent interest, a rate then usurious for noncommercial loans. Advance processed the loan documentation and obtained an appraisal from the firm of Lamb, Hanson & Lamb, prepared by Gregory Reynolds, showing a market value of $370,000. The combined loans upon the Stevens property would total $289,000, or 78.11 percent of the appraised value (the "loan–to–value ratio").

Security Pacific is a mortgage banker which engages in the origination and purchase of residential mortgage loans for subsequent resale in the secondary market to institutional investors, such as Westinghouse Credit Corporation. Prior to the second loan, Advance had knowledge of Security Pacific's loan programs and the specifications and requirements for such loans. Advance sent the loan package to Security Pacific for approval, and Security Pacific subsequently agreed to make the second loan, provided it was for a business purpose, and documented appropriately. Prior to closing the loan, Stevens again obtained, without payment, satisfactions of the mortgage from her private lenders to clear title. With her own money, she satisfied an industrial insurance lien recorded by the Department of Labor and Industries.

The loan was then closed at Heritage Escrow in February 1982. Stevens was accompanied at the closing by her attorney. There, she signed an affidavit attesting that the loan proceeds would be used for business rather than personal purposes. Both Stevens and her attorney reviewed this document before she signed it. Neither of them questioned it or objected to it. At this time, Stevens learned that the lender was Security Pacific.

Security Pacific had no direct dealing or contact with Stevens, as everything was handled by Advance. At no time was Security Pacific aware that the proceeds of this second loan would not be used for business purposes.

The trial court found that Stevens used most of the proceeds of the second loan for personal purposes. A large portion of the proceeds was used to satisfy construction

costs and construction loans for her residence. Some loan proceeds financed a dining room set, furs, and personal travel. A portion of the loan proceeds was, in fact, used for investment as represented.

In 1982, Security Pacific sold the second Stevens loans to Westinghouse as part of a $10 million second mortgage loan portfolio. The portfolio was sold pursuant to the terms of a letter from Earl M. Baldwin of Security Pacific to O.O. Osburn of Westinghouse and a "Sale and Servicing Agreement" under which Security Pacific retained the loan servicing for the portfolio. The documents prepared by Advance—the loan application, the note, the deed of trust, and the appraisal—were among the supporting documents Westinghouse received in the transaction.

In 1984, Stevens defaulted on both loans, and Advance commenced foreclosure on the first loan. The house was eventually sold and purchased at a trustee sale by Advance on December 20, 1985, for $192,243, which satisfied the first loan and left the second loan wholly unsatisfied. Westinghouse did not bid at the trustee sale. At the time of the trustee sale, the outstanding principal balance on the second loan (held by Westinghouse) was $123,431, plus substantial unpaid interest.

Prior to the trustee sale, Stevens brought a declaratory judgment action against Security Pacific and Westinghouse, seeking to have the second loan declared usurious. Security Pacific and Westinghouse brought third party claims for indemnity against Advance. Subsequently, Stevens brought usury and indemnity claims against Advance, and Advance asserted counterclaims and cross claims against Stevens, Security Pacific, and Westinghouse. On January 24, 1986, Charles Vulliet, attorney for Security Pacific and Westinghouse, filed a notice of intent to withdraw as attorney for Westinghouse. On May 8, 1986, following the trustee sale, Westinghouse filed an amended answer, which included a claim against Security Pacific for breach of contract.

On December 4, 1986, the trial court dismissed Stevens' claims against Security Pacific and Westinghouse on

grounds that (1) the loan was not usurious because it was made for business purposes, (2) Stevens was estopped from asserting a claim of usury by her affidavit of purpose, (3) Advance was not the agent of Security Pacific, and (4) Westinghouse was a holder in due course of the Stevens note. The trial court granted Westinghouse's counterclaim on the Stevens note, entering judgment in the amount of $123,431.65, plus interest at 18½ percent from February 1, 1984, plus costs and attorney's fees of $13,840. Advance's motions for summary judgment against Stevens, Security Pacific, and Westinghouse, and Security Pacific's cross motion for summary judgment against Advance were denied on March 18, 1987. Security Pacific's motion to dismiss the Westinghouse cross claim against it was denied on April 10, 1987.

Trial commenced June 23, 1987. The court dismissed Stevens' claims against all parties on grounds that the loan was made for business purposes, and Stevens was estopped by her affidavit of purpose.

The second part of the trial was concerned with the various claims between Security Pacific, Advance and Westinghouse. The court concluded that Security Pacific had breached its contract with Westinghouse in that the appraisal of Stevens' home was materially inaccurate. The trial court entered a second money judgment in favor of Westinghouse against Security Pacific for $123,431.65, together with interest of 16½ percent per year from December 20, 1985. Security Pacific was granted a like judgment against Advance on the basis that the $370,000 appraisal furnished to them by Advance was negligently done and because Halligan was negligent in preparing the loan package. The court found that Halligan knew Stevens' intended use of the loan proceeds, but that Security Pacific did not, and would not have made the loan if it had known the loan was for noncommercial purposes. The court also found the Reynolds appraisal of the Stevens residence at $370,000 was negligently done and that it overvalued the

Stevens residence by $90,000 to $120,000. Attorney's fees claimed by these three parties were denied.

All parties now appeal.

## USURIOUS ON ITS FACE

Stevens first argues that the loan was usurious on its face, and thus the burden is on the lender to prove that the transaction was exempt under RCW 19.52.080.

RCW 19.52.020(1) sets the maximum legal rate of interest. It also forbids anyone from directly or indirectly taking or receiving any greater interest for a loan.

The party asserting usury must prove five elements by a preponderance of the evidence:

> (1) a loan or forbearance, express or implied; (2) money or its equivalent constituting the subject matter of the loan or forbearance; (3) and understanding between the parties that the principal shall be repayable absolutely; (4) the exaction of something in excess of what is allowed by law for the use of the money loaned or for the benefit of the forbearance; and, in some jurisdictions, (5) an intent to exact more than the legal maximum for the loan or forbearance.

*Hansen v. Doerflein,* 52 Wn. App. 75, 78, 757 P.2d 997 (1988) (quoting *Rouse v. Peoples Leasing Co.,* 96 Wn.2d 722, 725, 638 P.2d 1245 (1982)); *Aetna Fin. Co. v. Darwin,* 38 Wn. App. 921, 923–24, 691 P.2d 581 (1984), *review denied,* 103 Wn.2d 1019 (1985).

■ A loan is usurious on its face when each of the elements of usury appears on the face of the loan contract. *Brown v. Giger,* 48 Wn. App. 172, 176, 738 P.2d 312 (1987) (citing *Aetna Fin. Co. v. Darwin, supra* at 923–24), *rev'd on other grounds,* 111 Wn.2d 76, 757 P.2d 523 (1988). The absence of an exemption under RCW 19.52.080 is not an element of usury. *Aetna Fin. Co. v. Darwin, supra* at 925. When a loan is usurious on its face, the burden is on the lender to prove the loan is exempt from the otherwise applicable usury law. *Aetna Fin. Co. v. Darwin, supra* at 924–25.

We conclude that this loan is usurious on its face because each of the elements of usury appears on the face of the loan contract. It is undisputed that there was a loan of money, that the principal was repayable absolutely, that the interest rate was in excess of that allowed for personal or consumer loans, and that Security Pacific knew that the rate charged was usurious for "non–commercial loans." Therefore, the burden is on the lender to show that the business exemption applies.

### BUSINESS PURPOSE EXEMPTION TO USURY LAW

Stevens argues that Security Pacific, Westinghouse, and Advance did not carry their burden of proving that her loan was for a business purpose.

RCW 19.52.080 provides in relevant part:

[P]ersons may not plead the defense of usury nor maintain any action thereon or therefor if the transaction was primarily for agricultural, commercial, investment, or business purposes: *Provided, however,* That this section shall not apply to a consumer transaction of any amount.

Consumer transactions, as used in this section, shall mean transactions primarily for personal, family, or household purposes.

In characterizing the purpose of the loan, the courts look for evidence of the use to which the borrower intended to put the loan proceeds at the inception of the loan contract. *Aetna Fin. Co. v. Darwin, supra* at 927. Characterizing the purpose of the loan according to the specific use to which the borrower intended to put the loan proceeds is consistent with the Legislature's purpose in enacting the usury law, *i.e.,* of preventing individuals from incurring debts at high interest rates for nonbusiness purposes. *Aetna Fin. Co. v. Darwin, supra* at 927. The borrower's intended use for the loan proceeds must be characterized according to the manifestations of intent, if any, that the borrower made to the lender at the time the parties entered into the loan contract. *Aetna Fin. Co. v. Darwin, supra* at

927. The acquiescence of the borrower in attempting to circumvent the usury statute is not determinative. *Aetna Fin. Co. v. Darwin, supra* at 928.

In *Brown v. Giger,* 111 Wn.2d 76, 757 P.2d 523 (1988), Giger borrowed $33,000 from Consumer Loan Service and immediately loaned it to a friend, Ebling, at no interest or business advantage to herself, who invested it in a mini-mart and restaurant business. However, Giger never made clear to Consumer Loan Service that she had no business interest in Ebling's venture. Ebling was present at the loan interview. Also, the loan documents described Giger's loan as having a business or commercial purpose. *Brown v. Giger,* 111 Wn.2d at 81–82. The trial court granted summary judgment in favor of the plaintiffs who loaned the money. The Court of Appeals, holding that the loan was not for a business purpose, reversed the judgment. The Supreme Court, holding that the transaction fell within the statutory exception to the usury laws, reversed the Court of Appeals and reinstated the judgment of the Superior Court.

The court in *Giger* concurred with the *Aetna* court that a loan's purpose is principally established by the representations the borrower makes to the lender at the time the loan is procured. *Brown v. Giger,* 111 Wn.2d at 82. The court reasoned that although Giger's subjective purpose was personal, all objective indications were that the loan was for a business purpose. The court went on to note that most conclusive are the loan documents themselves. *Brown v. Giger,* 111 Wn.2d at 82.

In the present case, both Stevens and Halligan knew that the purpose of the loan was personal. However, all documentation prepared for the loan indicated that it was for a business purpose. It was intended by both Stevens and Halligan that the loan be represented to the lender, Security Pacific, as being for a business purpose only, in order that Stevens could obtain the loan. The objective manifestations were that the loan was for business purposes, and therefore the "business purpose" exception applies.

Furthermore, nothing suggests that Stevens was "by adversity and necessity . . . driven to borrow money at any cost." *Baske v. Russell,* 67 Wn.2d 268, 273, 407 P.2d 434 (1965). The trial court found she was a sophisticated borrower, who had knowledge and experience in real estate financing. This finding is supported by substantial evidence. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959). She was president of Wall Street Brokers, a firm which has as its primary business the sale of seller–financed real estate contracts, notes and divorce liens. She has been a licensed real estate broker since 1974 and a notary public since 1972. She has authored several articles concerning real estate mortgages, including one published in the June 1985 *Washington State Bar News.*

In the present case, Stevens took advantage of the system to obtain financing for a luxury home that she otherwise would not have been able to obtain, and now seeks to raise the defense of usury. This is not the type of activity that the Legislature intended to protect in enacting the usury laws. Accordingly, we find that this loan falls within the exception for business loans.

SECURITY PACIFIC'S ENTITLEMENT TO INDEMNITY
FROM ADVANCE

Advance argues that it is not liable to Security Pacific on an indemnity theory for any breach by Security Pacific of its contract with Westinghouse.

Indemnity requires full reimbursement and transfers liability from the one who has been compelled to pay damages to another who should bear the entire loss. Indemnity may be permitted because of a breach of an independent duty between the indemnitor and the indemnitee. *Olch v. Pacific Press & Shear Co.,* 19 Wn. App. 89, 93, 573 P.2d 1355, *review denied,* 90 Wn.2d 1017 (1978).

Where the trial court has weighed the evidence, review is limited to ascertaining whether the findings of fact are supported by substantial evidence and, also, whether the findings support the conclusions of law and the

judgment. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 545 P.2d 1193 (1976).

In the present case, the trial court concluded that the appraisal by Reynolds of the Stevens residence was negligently done. It also concluded that in the contract Security Pacific represented and warranted to Westinghouse that under the loan–to–value ratio, the fair market value of the property would not be less than $360,000. The court interpreted Security Pacific's obligations under paragraph V of its agreement with Westinghouse to require it to replace or repurchase the loan because the difference between the warranted value and the actual value constituted a material inaccuracy. The trial court further concluded that the loan package was defective and in nonconformance with the agreement due to the negligence and misrepresentation of Advance or its agent, Halligan; therefore, Security Pacific was entitled to indemnity from Advance for all liability to Westinghouse.

The trial court's conclusions are supported by the following unchallenged findings of fact: Stevens and Halligan, Advance's agent, discussed the purpose of the loan and Halligan was aware that Stevens intended a nonbusiness purpose. Halligan nevertheless prepared a commercial loan package which represented an intended business purpose. Halligan did so knowing that Advance would not make the loan, but that it would be "brokered" to another lender who would fund the loan. Advance knew and expected that the loan would be resold by the lender in the secondary market. The appraisal of the Stevens property made in connection with the second loan was ordered by Advance and transmitted to Security Pacific as part of the loan package. Furthermore, Security Pacific reasonably relied on the loan package prepared by Advance and never would have made the loan if the actual purpose had been disclosed.

Advance argues that it is not liable to Security Pacific because it is not liable for any negligence in the appraisal. However, when Halligan began to work for Advance, he had completed a training program in specific mortgage banking

underwriting criteria and a program in investment criteria. In addition, he had 3½ years in the mortgage banking business. He worked for Advance for approximately 1 year doing about 20 loans a month. From his training and extensive experience in handling primarily residential loans, the trial court could have found that in the exercise of reasonable care, Halligan should have recognized that the Reynolds appraisal was highly inflated. The trial court found the appraisal overstated the value by between $90,000 and $120,000.

■ In addition, Advance attempts to avoid liability for negligent misrepresentation by asserting its own lack of knowledge regarding the misrepresentations. However, this argument ignores the fact that the knowledge of Halligan, who was Advance's agent, is imputed to Advance. *See Sparkman & McLean Income Fund v. Wald,* 10 Wn. App. 765, 770, 520 P.2d 173 (1974).

■ Advance also asserts that the misstatement of the purpose of the loan was not the proximate cause of Westinghouse's damages. This argument was raised for the first time in Advance's reply brief and should not be considered. *Fosbre v. State,* 70 Wn.2d 578, 424 P.2d 901 (1967); RAP 10.3(c).

Accordingly, we find that Security Pacific was entitled to indemnity from Advance.

SECURITY PACIFIC/WESTINGHOUSE CONTRACT

Security Pacific and Advance argue that Security Pacific did not breach its contract with Westinghouse because the Stevens loan complied with the loan–to–value criteria in Security Pacific's contract with Westinghouse, and thus Westinghouse was not entitled to judgment against Security Pacific.

■ Contracts must be construed to reflect the intent of the parties. *Corbray v. Stevenson,* 98 Wn.2d 410, 415, 656 P.2d 473 (1982). Where the contract language is clear, this intent is ascertained from the language of the contract. *In re Estates of Wahl,* 99 Wn.2d 828, 831, 664 P.2d 1250

(1983). An interpretation which gives effect to all the words of a contract is favored over one which renders some of the language meaningless or ineffective. *Seattle–First Nat'l Bank v. Westlake Park Assocs.*, 42 Wn. App. 269, 274, 711 P.2d 361 (1985), *review denied,* 105 Wn.2d 1015 (1986). Construction of the contract requires that, if possible, each part thereof be given some effect. *Bremer v. Mt. Vernon Sch. Dist. 320,* 34 Wn. App. 192, 199, 660 P.2d 274 (1983).

The contract between Security Pacific and Westinghouse consisted of the Sale and Servicing Agreement and the Osburn letter.

The Sale and Servicing Agreement provides as follows:

III. Seller–Servicer represents and warrants as to each such mortgage offered for sale under this Agreement that:
A. The mortgage has been duly executed . . . and such loan and mortgage meet the criteria established in that certain commitment letter dated *May 14, 1982,* which is incorporated by reference herein and attached hereto as exhibit *B.* [The Osburn letter.]

. . .
V. If at any time any representation or warranty set forth in Paragraph III proves to be incomplete or inaccurate in any material respect with regard to any loan, Seller–Servicer shall, upon demand of Buyer, substitute for such loan one or more other loans having an aggregate outstanding balance, at the date of substitution, approximately equal to that of the loan being replaced at the date of replacement.

Exhibit 50.

In addition, the Osburn letter provides in part as follows:

Loan–to–Value
Loan–to–Value will be based upon the appraised value of the subject property or the sales price, whichever is less.

Exhibit 50.

Paragraph V requires replacement of a loan where any warranty set forth in paragraph III contains a material inaccuracy. Paragraph III warrants that loan to value will

be based on appraisal value of the property. It is undisputed that there was a material inaccuracy in the appraised value of the house. The parties' dispute centers on whether Security Pacific warranted that the appraised value would not be materially inaccurate.

Although the Osburn letter does not expressly state that Security Pacific warrants that the appraisal will be accurate, the letter does make several statements regarding the amount by which the value of the property securing the loan exceeds the indebtedness against it. Under paragraph V, if such representations regarding loan to value are materially inaccurate, the loan must be replaced. Because appraised value is a component of loan to value, Security Pacific, in essence, warrants that it will replace a loan where appraised value is materially inaccurate. Accordingly, Security Pacific was contractually obligated to replace the loan. Its failure to do so constitutes a breach of the contract.

In addition, Security Pacific argues that the appraiser, Reynolds, was not negligent in the absence of evidence of breach of a standard of care applicable to his profession. However, we need not reach the issue of whether there is substantial evidence to support the trial court's finding that Reynolds was negligent. Security Pacific's liability to Westinghouse is based on a contractual duty to replace loans containing material inaccuracies. Proof of negligence on the part of the appraiser is not necessary to this determination.

### MEASURE OF DAMAGES OWED BY SECURITY PACIFIC TO WESTINGHOUSE

Security Pacific next argues that the trial court erred in determining the measure of damages owed by it to Westinghouse.

 The rule regarding contract damages is as follows:

Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in

as good a position as he would have been in had the contract been performed.

*Eastlake Constr. Co. v. Hess,* 102 Wn.2d 30, 46, 686 P.2d 465 (1984) (quoting Restatement (Second) of Contracts § 347, comment *a* (1981)).

Furthermore, paragraph V of the Sale and Servicing Agreement provides in part as follows:

> If at any time any representation or warranty set forth in Paragraph III proves to be incomplete or inaccurate in any material respect with regard to any loan, Seller–Servicer shall, upon demand of Buyer, substitute for such loan one or more other loans having an aggregate outstanding balance, at the date of substitution, approximately equal to that of the loan being replaced at the date of replacement.

Exhibit 50.

Accordingly, Security Pacific was contractually obligated to replace the Stevens loan, which had an outstanding principal balance of $123,431, with a loan of equal value. Because Security Pacific failed to replace such loan, Westinghouse was entitled to damages in a sum of money that would put Westinghouse in as good position as it would have been had the contract been performed. This sum is $123,431, plus interest on that amount of 16½ percent per annum from December 20, 1985, which is the amount actually awarded by the trial court.

### CLAIM AGAINST STEVENS FOR ATTORNEY'S FEES

Security Pacific argues that the trial court erred in denying its attorney's fees and costs from Stevens.

■ Attorney's fees will be awarded to a prevailing party only on the basis of a private agreement, a statute, or recognized ground of equity. *Pennsylvania Life Ins. Co. v. Department of Empl. Sec.,* 97 Wn.2d 412, 413, 645 P.2d 693 (1982). RCW 4.84.330 provides that the prevailing party is entitled to attorney's fees if the contract which is the subject of the action authorizes such an award.

By the terms of the deed of trust, Stevens covenanted to promptly pay when due the principal and interest indebtedness evidenced by the note.

Security Pacific bases its claim for fees on paragraph 17 of the deed of trust, which sets forth the procedure for accelerating sums due upon borrower's breach and further provides as follows:

> If the breach is not cured on or before the date specified in the notice [of acceleration], Lender at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorney's fees.

Exhibit 13. We find that this provision applies only where the lender has accelerated the note upon borrower's breach. In the present case, Security Pacific was not seeking to accelerate the note, as it had already been sold to Westinghouse. Accordingly, there is no contractual provision which would support an award of attorney's fees from Stevens in the present case.

### CLAIMS AGAINST ADVANCE AND SECURITY PACIFIC FOR ATTORNEY'S FEES

Security Pacific argues that it is entitled to attorney's fees from Advance on three alternative grounds: (1) equitable indemnity; (2) the usury statute; and (3) the Consumer Protection Act. Westinghouse argues that it is entitled to an award of attorney's fees from Security Pacific.

The general rule in this state is that in absence of a contract, statute, or recognized ground of equity, attorney's fees will not be awarded as part of the costs of litigation. *Broten v. May*, 49 Wn. App. 564, 571, 744 P.2d 1085 (1987) (citing *Haner v. Quincy Farm Chems., Inc.*, 97 Wn.2d 753, 757, 649 P.2d 828 (1982)). One of the recognized grounds of

equity under which attorney's fees can be awarded is the theory of equitable indemnity.

▪▪▪ The theory of equitable indemnity and its elements have been described as follows:

> When the natural and proximate consequences of a wrongful act of A [Advance] involve B [Security Pacific] in litigation with others, B may as a general rule recover damages from A for reasonable expenses incurred in that litigation, including attorney's fees.
>
> Three elements are necessary to create liability: (1) a wrongful act or omission by A toward B; (2) such act or omission exposes or involves B in litigation with C [Westinghouse]; and (3) C was not connected with the initial transaction or event, *viz.*, the wrongful act or omission of A toward B.

*Broten v. May,* 49 Wn. App. 564, 571, 744 P.2d 1085 (1987) (quoting *Dauphin v. Smith,* 42 Wn. App. 491, 494, 713 P.2d 116 (1986)).

The trial court properly denied Security Pacific its attorney's fees under the theory of equitable indemnity. Security Pacific was exposed to the litigation not only by Advance's conduct, but by its own refusal to replace the loan which constituted a breach of contract. Therefore, it cannot be said that Security Pacific acted "merely as a conduit" for Advance's wrongdoing. *Rottinghaus v. Howell,* 35 Wn. App. 99, 112, 666 P.2d 899 (1983). Accordingly, the trial court properly found that Security Pacific should be responsible for its own attorney's fees.

For the same reason, Security Pacific's request for attorney's fees from Stevens on grounds of equitable indemnity must fail.

Security Pacific also requests attorney's fees under the usury statute, which states as follows:

> If the agent of both the borrower and lender, or of the lender only, transacts a usurious loan for a commission or fee, such agent shall be liable to his principal for the amount of the commission or fee received or reserved by

the agent, and liable to the lender for the loss suffered by the lender as a result of the application of this act. (Footnote omitted.) RCW 19.52.030(2), in part.

Because we find this loan is not usurious, Security Pacific is not entitled to an award of fees under this provision.

Finally, Security Pacific requests attorney's fees from Advance under the Washington Consumer Protection Act, RCW 19.86. We find that such an award would be inappropriate. No violation of the Consumer Protection Act was found. In addition, the act provides that only a claimant is authorized to recover such fees, and Security Pacific did not allege in its complaint or during trial any violation of the Consumer Protection Act, but merely brought it up during post–trial argument for attorney's fees.

In addition, Westinghouse asserts three theories for recovery of attorney's fees from Security Pacific: (1) an implied contract by Security Pacific to pay attorney's fees to Westinghouse; (2) equitable indemnity; and (3) that Security Pacific defended against Westinghouse's claim in bad faith. The trial court properly rejected all three theories.

First, the Security Pacific–Westinghouse contract contains no provision providing for the recovery of attorney's fees by a prevailing party. Secondly, Westinghouse is not entitled to attorney's fees under equitable indemnity because this is not a case where Westinghouse was sued by another party due to the wrongful conduct of Security Pacific. The equitable indemnity theory has no application to the portion of Westinghouse's attorney's fees which was incurred obtaining affirmative relief from Security Pacific for breach of contract. Nor does equitable indemnity apply to attorney's fees incurred by Westinghouse with regard to the usury claim, because the court found no wrongful conduct by Security Pacific.

Finally, Westinghouse claims attorney's fees on the theory that Security Pacific defended the litigation in bad

faith. The trial court found that claim to be totally without merit and a review of the record indicates that there are no facts showing bad faith on the part of Security Pacific. Accordingly, Westinghouse fails to present any theory upon which it could recover attorney's fees from Security Pacific.

CLAIM AGAINST WESTINGHOUSE FOR ATTORNEY'S FEES

Security Pacific argues that it is entitled by contract to reimbursement from Westinghouse for the legal expenses it incurred in defending the validity of the Stevens loan and deed of trust.

Paragraph IX(E) of the Sale and Servicing Agreement provides in part as follows:

Notwithstanding anything to the contrary in this Agreement, if in the exercise of Servicer's [Security Pacific's] duties and obligations under this Agreement the retention of legal counsel is required to foreclose, protect, or defend the mortgages and Buyer's [Westinghouse's] rights in those mortgages, such shall be at the sole expense of the Buyer, and Buyer shall have the right to designate the counsel of its choice.

Exhibit 50.

Stevens filed her usury complaint on August 20, 1984. Security Pacific retained counsel to defend against the complaint. Security Pacific argues that it defended in behalf of Westinghouse until December 11, 1985, at which time Westinghouse asserted usury in an attempt to rescind the purchase of the Stevens loan. Security Pacific claims reimbursement for the legal expenses incurred in this matter prior to that time which amount to $10,346.42.

Westinghouse asserts that Security Pacific did not defend it in good faith and that, in fact, Security Pacific failed to defend it. Counsel was defending both Security Pacific and Westinghouse during this time. In light of the complex nature of the case and Security Pacific's failure to present adequate proof that its legal expenditures were for the benefit of Westinghouse, we find that an award of no attorney's fees was reasonable.

## POSTJUDGMENT INTEREST

Advance argues that the award of postjudgment interest at a rate of 16½ percent per annum until paid in full is erroneous because it exceeds the legal limit provided for by RCW 4.56.110.

RCW 4.56.110 provides as follows:

Interest on judgments shall accrue as follows:
(1) Judgments founded on written contracts, providing for the payment of interest until paid at a specified rate, shall bear interest at the rate specified in the contracts: *Provided,* That said interest rate is set forth in the judgment.
(2) Except as provided under subsection (1) of this section, judgments shall bear interest from the date of entry at the maximum rate permitted under RCW 19.52-.020 on the date of entry thereof . . .

As of the date of entry of the subject judgment, August 12, 1987, the maximum rate permitted under RCW 19.52.020 was 12 percent.

In the present case, the contract provides that Westinghouse would receive interest equivalent to 16½ percent on its investment. Accordingly, under RCW 4.56.110(1), postjudgment interest of 16½ percent is not excessive.

The trial court's decision is affirmed.

PEKELIS, J., and WILLIAMS, J. Pro Tem., concur.

Review denied at 112 Wn.2d 1023 (1989).