[No. 9201–1–III.   Division Three.   October 26, 1989.]

ALI MARASHI, ET AL, *Respondents,* v. HUGH C. LANNEN, ET AL, *Appellants.*

*Martin Weber* and *Lukins & Annis, P.S.,* for appellants.

*Timothy Harkins* and *Parkins, Ryan & Harkins,* for respondents.

MUNSON, A.C.J.—Hugh and Irene Lannen appeal the judgment imposing usury penalties equal to the amount of the principal owed to them on a promissory note by Ali and Batool Marashi.[1] The Lannens contend the loan was exempt from the usury statutes under the business purpose exception, and evidence of the loan's alleged consumer purpose was insufficient to support the jury's verdict. We affirm.

Mr. Marashi contacted Rick Van Gelder of Equity Mortgage Services, Inc., seeking a loan. The Marashis needed money to repay two women from whom they had borrowed $15,000 to remodel their home. Mr. Van Gelder, the sole stockholder in Equity, arranged for the Lannens to lend $32,000 to the Marashis.

---

[1] The Marashis filed a notice of cross appeal. Their brief contains no assignments of error nor argument in support thereof. We presume the cross appeal has been abandoned.

The loan closed on June 3, 1983. The Marashis first signed a loan disbursement schedule which reflected payments of over $8,000 to attorneys for prior judgments. Mr. Marashi had previously told Mr. Van Gelder these judgments related to his divorce from his former wife and to a dispute involving his personal automobile. The Marashis next signed a deed of trust on their home and a promissory note. The interest rate on the loan was 20 percent, with the principal amount due on June 3, 1985. Finally, after showing them a check for the loan proceeds, Mr. Van Gelder handed the Marashis a borrower's certificate which stated the loan was to be used primarily for business purposes. Mr. Van Gelder told the Marashis the document was "just a formality", and they signed it.

The Marashis obtained an extension of the due date from June 1985 to June 1987. They stopped making payments in December 1985. On June 23, 1987, after a nonjudicial foreclosure was commenced on the deed of trust, they filed a complaint against the Lannens, Equity, and the trust deed trustee, alleging the loan was usurious. The case was tried before a jury which found the loan usurious; the trial court, having determined the usury penalties exceeded the amount due on the promissory note, canceled the note.[2]

The Lannens first contend they were entitled to have the usury claim dismissed at the close of the Marashis' case because the borrower's certificate is conclusive evidence the loan was exempt from the usury statute, and the Marashis are estopped from denying the statement in the certificate.

In ruling on a motion for directed verdict, the trial court must view the evidence in the light most favorable to the opposing party's evidence and most strongly against the moving party to determine whether there is a question of fact for the jury. *Baldwin v. Sisters of Providence in*

---

[2]The Lannens did not file a cross complaint against Equity, and Equity is not a party to this appeal. The Lannens' attorney advised this court that Equity has taken bankruptcy.

*Wash., Inc.,* 112 Wn.2d 127, 132, 769 P.2d 298 (1989). In order to establish a claim for usury, a borrower must show

> ■ a loan or forbearance, express or implied, of money or other negotiable tender; (2) an understanding between the parties that the principal must be repaid; (3) the exaction of a greater rate of interest than is allowed by law; and (4) an intention to violate the law.

*Liebergesell v. Evans,* 93 Wn.2d 881, 887, 613 P.2d 1170 (1980). The Lannens do not contend the loan to the Marashis was not usurious on its face, but claim RCW 19.52.080 precludes the Marashis from maintaining their action for usury. The statute provides in part:

> persons may not plead the defense of usury nor maintain any action thereon or therefor if the transaction was primarily for . . . commercial . . . or business purposes: *Provided, however,* That this section shall not apply to a consumer transaction of any amount.
>
> Consumer transactions, as used in this section, shall mean transactions primarily for personal, family, or household purposes.

RCW 19.52.080.

■ When a loan is usurious on its face, the burden is on the lender to show the business exception applies. *Stevens v. Security Pac. Mortgage Corp.,* 53 Wn. App. 507, 768 P.2d 1007, *review denied,* 112 Wn.2d 1023 (1989). The Lannens claim the statement of business purpose in the borrower's certificate conclusively establishes the loan comes within the business exception.

■ In the context of RCW 19.52.080, a loan's purpose is principally established by the representations the borrower makes to the lender at the time of the loan. *Brown v. Giger,* 111 Wn.2d 76, 757 P.2d 523 (1988). In *Brown,* the court considered the borrower's oral representations to the broker, which did not clearly show that the purpose of the loan was personal, then considered statements contained in the loan documents themselves, describing the loan as having a business purpose and found the documents more conclusive. Similarly, in *Pacesetter Real Estate, Inc. v. Fasules,* 53 Wn. App. 463, 767 P.2d 961 (1989), this court considered

the corporate borrowers' oral representations that the purpose of the loan was to complete a combined office–residence and, finding these statements inconclusive, held that the commercial purpose acknowledged in the promissory note itself was more conclusive. In *Conrad v. Smith,* 42 Wn. App. 559, 566, 712 P.2d 866, *review denied,* 105 Wn.2d 1017 (1986), the borrower "made numerous representations . . . during the loan process with the apparent intention of obfuscating matters." Consequently, the court relied on facts as shown by the pleadings, depositions, written statements, and exhibits to find the loan was procured for a business purpose. The holding of these cases is that when other representations of the borrowers are inconclusive, written statements in the loan documents may be dispositive.

Here, Mr. Marashi testified he fully disclosed to Mr. Van Gelder the personal expenditures for which he needed to borrow money. This evidence directly conflicts with the evidence of the borrower's certificate. Conflicting evidence on a material issue normally creates an issue for the jury.[3]

██ The Lannens nevertheless contend the issue should not have been submitted to the jury because the Marashis are estopped to deny the representations contained in the borrower's certificate. The elements of estoppel are:

> (1) an admission, statement, or act inconsistent with the claim afterwards asserted; (2) an action by the other party on the faith of such admission, statement or act; and (3) an injury to the other party if the claimant is allowed to contradict or repudiate his earlier admission, statement, or act.

*Liebergesell,* at 888–89. The reliance reflected in the second element must be justified. *Liebergesell.* Reliance is justified

---

[3]In *Pacesetter,* at 471, this court held that "determination of a loan's purpose within the meaning of RCW 19.52.080 is a conclusion of law and/or a mixed question of law and fact." Determination of the purpose is for the jury, and the question of whether that purpose constitutes a business purpose is a question of law to be decided by the court. Here, the statement in the borrower's certificate does not reveal the actual purpose of the loan, but instead asserts the legal conclusion it is a business purpose. Whether the facts support that conclusion remains a question for the jury.

only when the party claiming estoppel did not know the true facts and had no means to discover them. *PUD 1 v. WPPSS,* 104 Wn.2d 353, 365, 705 P.2d 1195, 713 P.2d 1109 (1985).

Here, Mr. Marashi testified he disclosed his true purpose to Mr. Van Gelder. The case was tried on the theory that Mr. Van Gelder was acting either as agent for the lender or as agent of both borrower and lender.

> The acts and dealings of an agent in loaning money shall bind the principal, and in all cases where there is usurious interest contracted for by the transaction of any agent the principal shall be held thereby to the same extent as though he had acted in person. And *where the same person acts as agent of the borrower and lender, he shall be deemed the agent of the lender for the purposes of this act.* If the agent of both the borrower and lender, or of the lender only, transacts a usurious loan for a commission or fee, such agent shall be liable to his principal for the amount of the commission or fee received or reserved by the agent, and liable to the lender for the loss suffered by the lender as a result of the application of this act.

(Italics ours.) RCW 19.52.030(2). The Lannens are statutorily bound by the dealings of their agent, Mr. Van Gelder. It may well be that Mr. Van Gelder advised the Lannens that the loan was for a business purpose. If, however, Mr. Marashi did in fact disclose his purpose to Mr. Van Gelder, then the Lannens must be deemed to have had knowledge of, or the means to discover, the personal purpose of the loan. At the close of the Marashis' case, the evidence permitted an inference that Mr. Van Gelder knew of the personal purpose of the loan, and the court could not conclude, as a matter of law, that the Lannens were entitled to act in reliance on the statement contained in the borrower's certificate.

The evidence of the business or personal purpose of the loan was conflicting, and the Lannens' imputed knowledge of Mr. Marashi's alleged disclosure to Mr. Van Gelder precluded finding, as a matter of law, that the Marashis were estopped to deny the written statement. Interpreting this evidence most strongly against the Lannens, the court

properly determined there were questions of fact for the jury and denied the Lannens' motion to dismiss.

The Lannens claim the jury verdict finding the loan usurious was not supported by the evidence. They contend the business exception applies because the Marashis certified the loan was for business purposes and never informed the Lannens the loan proceeds would be used for personal purposes.

As previously noted, "determination of a loan's purpose within the meaning of RCW 19.52.080 is a conclusion of law and/or a mixed question of law and fact." *Pacesetter,* at 471. Here, the issue is not whether the certificate–stated purpose constituted a business purpose, but what purpose the borrowers manifested at the inception of the loan. Mr. Marashi testified he disclosed to Mr. Van Gelder his intention to use the loan to pay debts incurred in remodeling his home and to pay off judgments relating to his divorce and a dispute involving his personal automobile. Mr. Van Gelder testified Mr. Marashi told him he needed working capital for his business. The Marashis concede they signed the borrower's certificate, but claim Mr. Van Gelder did not explain its significance and assured them it was "just a formality."[4] John Thomas, an attorney who drafted the loan documents at Mr. Van Gelder's request, told the Marashis they would have to sign the borrower's certificate in order to receive the loan but did not explain its purpose relative to the usury statutes. Although the Lannens were present at the closing, they did not ask the Marashis how the loan proceeds would be used. This conflicting evidence presented a factual issue, which the jury resolved in favor of the Marashis.

■ Although loan documents frequently have been found to be more conclusive than other manifestations of

---

[4]Equity arranged for the Lannens to make two other loans shortly after the Marashi loan. In each case, the borrowers signed a certificate of business purpose similar to the Marashis'; there was evidence these other loans were also made for personal use and such a certificate was also executed.

the borrower's intent, *see Giger, Pacesetter,* and *Conrad,* when the lender manipulates the loan's structure to evade the usury law, a borrower's acquiescence does not make the loan qualify for the business exception. *Brown,* at 83; *Aetna Fin. Co. v. Darwin,* 38 Wn. App. 921, 928, 691 P.2d 581 (1984), *review denied,* 103 Wn.2d 1019 (1985). The record contains ample evidence from which the jury could find that Mr. Marashi told Mr. Van Gelder he needed the money for personal expenses; Mr. Van Gelder prepared the borrower's certificate to evade the usury law; and the Marashis merely acquiesced in the lender's scheme.

Acquiescence in a broker's scheme to evade the usury law does not always afford the borrower a right to later claim usury. *See Stevens v. Security Pac. Mortgage Corp., supra.* *Stevens* affirmed the trial court's dismissal of a borrower's usury claim, even though the borrower represented to the broker the loan was for remodeling her home. *Stevens* is distinguishable from the present case in two important ways. First, the broker in *Stevens* was not the lender's agent, and the borrower and broker both intended to deceive the lender. Here, Mr. Van Gelder was the Lannens' agent, and Mr. Marashi testified he was unaware of the purpose of the borrower's certificate and had not seen it until after he signed the promissory note. Second, Ms. Stevens was a sophisticated borrower who "took advantage of the system". *Stevens,* at 517. Here, Mr. Marashi testified that at the time of the loan, he did now know what the usury rate was; he would not have signed the borrower's certificate if he had known its purpose; and he only learned later that the loan was usurious.

The record contains substantial evidence from which a jury could find the Marashis objectively manifested their intent to use the loan proceeds from the Lannens to pay off personal debts and, in signing the borrower's certificate, they merely acquiesced in a scheme for avoiding the usury law, which was originated by the Lannens' agent, Mr. Van Gelder. This evidence supports the verdict.

The Marashis are entitled to attorney fees of $5,712.

The judgment is affirmed.

GREEN and SHIELDS, JJ., concur.