[No. 34627-0-I.     Division One.     November 13, 1995.]

EULOGIO CASTRONUEVO, ET AL., *Appellants*, v.
GENERAL ACCEPTANCE CORPORATION, *Respondent*.

*Tarl R. Oliason* and *McKisson & Sargent, Inc.*, for appellants.

*Carol S. Hunting, Scott B. Henrie,* and *Williams, Kastner & Gibbs,* for respondent.

GROSSE, J. — Eulogio and Francisca Castronuevo (the Castronuevos) appeal the judgment entered in favor of General Acceptance Corporation (GAC) in the Castronuevos' action seeking monetary relief and a declaratory judgment that a loan made to them by GAC was usurious and therefore in violation of state law. The trial court entered judgment in favor of GAC on the ground that section 501 of the Depository Institutions Deregulation and Monetary Control Act of 1980 (12 U.S.C. § 1735f-7a) preempts application of Washington's usury statute, RCW 19.52, with respect to this loan. We affirm the judgment in favor of GAC, but on the ground that the loan at issue was a business loan and therefore fell within the scope of RCW 19.52.080, which prohibits a person from pleading the defense of usury or maintaining an action for usury if the transaction was for a business purpose.

## FACTS

GAC made three loans to the Castronuevos. In each loan, the Castronuevos signed a promissory note and pledged their residence as security. The loans were taken

to enable the Castronuevos' son, William, to finance various business ventures, none of which were successful. The Castroneuvos and their son agreed among themselves that William would repay the loans from the proceeds of his businesses. The Castronuevos' usury claim involves the third, and last, loan from GAC. The three loans are interrelated, however, so it is necessary to discuss all three of them.

The first loan was made in November 1986. The loan proceeds were used to purchase inventory for William's business. In the promissory note, the Castronuevos represented that the loan proceeds were to be used exclusively for business or commercial purposes and not for personal, family, or household purposes within the meaning of RCW 19.52.080. The loan agreement also contained a statement that the loan proceeds would be used for business purposes, and not for household or consumer purposes. The borrowers missed several payments, including a balloon payment due in December 1988.

The second loan agreement was dated May 22, 1989. The second loan paid off the first one and advanced to the borrowers an additional $4,749.52. The promissory note contained the same representations as the first one regarding use of the proceeds for only business purposes. In addition, the Castronuevos executed an affidavit stating the same thing. The borrowers defaulted on this loan also.

The third loan agreement was dated July 19, 1991 and was structured as a refinancing of the second loan. In addition to paying off the second loan, the third loan advanced to William an additional $2,930.44. The promissory note again included a statement that the proceeds were to be used exclusively for business or commercial purposes. The Castronuevos executed another affidavit providing that the loan proceeds would be used solely to refinance loans and to help William in his landscaping business. The Castronuevos also swore that the proceeds would not be used for personal, household, or consumer

purposes. Of the $2,930.44 in additional funds loaned, Mrs. Castronuevo gave William $2,500 and kept the rest. William used $1,400 of this sum to pay off his car and put the remainder towards developing ideas for other businesses.

The borrowers defaulted on the third loan. Eventually, the Castronuevos refinanced the loan with another lender and GAC received its funds in satisfaction of the note on January 7, 1993.

The Castronuevos filed their complaint against GAC on May 13, 1992, seeking a declaration that the third loan was usurious. The complaint also sought monetary relief, costs, attorney fees, and statutory penalties for violation of the Consumer Protection Act.[1]

GAC answered the complaint and set forth as affirmative defenses that the Castronuevos failed to state a claim upon which relief could be granted, and that the loan was made primarily for commercial, investment, or business purposes and was exempt from the usury statue pursuant to RCW 19.52.080. The answer did not specifically mention federal preemption.

According to the Castronuevos' trial memorandum, GAC first raised the federal preemption issue one week before trial in a letter faxed from GAC's counsel to the Castronuevos' counsel. The letter was not included as an exhibit to the trial memorandum because it contained references to settlement negotiations. GAC does not dispute the timing of its affirmative defense and it is assumed that the defense was first raised, as the Castronuevos claim, one week before trial.

The Castronuevos argued that GAC waived the preemption claim by failing to raise it as an affirmative defense. The trial court ruled that federal preemption is not an affirmative defense and that GAC had not waived the defense by failing to raise it in its answer. After a bench trial, the court ruled that the Castronuevos' claim was

---

[1]RCW 19.86. Under RCW 19.52.036, entering into or transacting a usurious contract is "an unfair act or practice in the conduct of commerce for the purpose of the application of the consumer protection act found in chapter 19.86 RCW."

preempted by federal law. The court proceeded further, however, and ruled that if the claims were not preempted, then the loan was usurious under state law because it did not fall within the business or commercial purpose exception to the usury statutes. After entering findings of fact and conclusions of law, the court entered judgment in favor of GAC, but denied its request for attorney fees. This appeal followed.

## DISCUSSION

The threshold issue presented is whether the loan at issue was for a business or consumer purpose. If the loan was for a business purpose, then the loan was exempt from the state usury laws pursuant to RCW 19.52.080 which provides in part:

> [P]ersons may not plead the defense of usury nor maintain any action thereon or therefor if the transaction was primarily for agricultural, commercial, investment, or business purposes: PROVIDED, HOWEVER, That this section shall not apply to a consumer transaction of any amount.
>
> Consumer transactions, as used in this section, shall mean transactions primarily for personal, family, or household purposes.

Additionally, if the loan was for a business purpose, then the federal Depository Institutions Deregulation and Monetary Control Act of 1980 does not apply,[2] and federal preemption does not arise as an issue.

██ In the context of RCW 19.52.080, a loan's purpose "is principally established by the representations the borrower makes to the lender at the time the loan is procured."[3] The issue is a factual one to be answered after examining the circumstances surrounding the transac-

---

[2]*See* 12 U.S.C. §§ 1735f-5 and 1735f-7 and 15 U.S.C. § 1602.

[3]*Brown v. Giger*, 111 Wn.2d 76, 82, 757 P.2d 523 (1988).

tion.[4] When the borrower's representations are inconclusive, written statements in the loan documents may be dispositive.[5] "[W]here a written certificate of purpose is in conflict with oral disclosures, the court cannot conclude as a matter of law that the lender was unaware of the true purpose of the loan and was entitled to rely on the statements contained in the borrower's written certificate."[6] When oral representations conflict with a business purpose certificate, "the issue is not whether the certificate-stated purpose constituted a business purpose, but what purpose the borrowers manifested at the inception of the loan."[7]

In the present case, the Castronuevos executed affidavits and signed other documents stating that the loan from GAC was for business purposes. While this will not automatically make the transaction a business transaction if the Castronuevos' representations at the time of the loan contradicted the writings, we find nothing in the record to support the conclusions that the borrowers represented anything to the lenders other than the loan proceeds would be used for business purposes.

Mrs. Castronuevo and her son William testified at trial. Neither of them testified to representing to the lender that the loan proceeds would be used for anything but to refinance the second loan. Bill Calvo and Jack Funes of GAC, both of whom were involved in the loans to the Castronuevos, testified that in seeking the third loan, William represented that it would be used both to refinance the second loan and to help him start a landscaping business. The borrower's settlement statement (plaintiff's exhibit 14) shows that $28,000 out of the $34,000 loan proceeds went to paying off the second loan and $2,900 went to the borrowers. We find nothing in the record to show that the Castronuevos represented to GAC that the loan proceeds

---

[4]*McGovern v. Smith*, 59 Wn. App. 721, 731, 801 P.2d 250 (1990).

[5]*Marashi v. Lannen*, 55 Wn. App. 820, 824, 780 P.2d 1341 (1989).

[6]*McGovern*, 59 Wn. App. at 731.

[7]*Marashi*, 55 Wn. App. at 826.

would be used for personal matters. The third loan was taken out in order to repay the second loan, which was for a business purpose and which was taken out to repay the first loan, which was also for a business purpose. Each of the loans had as its purpose the facilitation of William's business ventures. Thus we find that the third loan was for a business, not personal, purpose.[8]

Because the loan was for a business purpose, the Castronuevos were precluded from maintaining an action under the usury laws. A loan which is for a business purpose is exempt from the usury statutes under RCW 19.52.080.

We therefore find that the trial court erred by finding that the loan was usurious under Washington law. Additionally, because the federal statute which the court held preempted the Castronuevos' claim, the Depository Institutions Deregulation and Monetary Control Act of 1980, applies only to consumer transactions, the court also erred by finding that the claim was preempted. In light of our disposition of the issues presented, we need not and do not address whether the trial court erred by finding that federal preemption is an affirmative defense.

GAC claims the trial court erred by denying its request for attorney fees and claims it is entitled to an award of attorney fees on appeal. We disagree.

GAC contends it was entitled to an award of attorney fees under RCW 4.84.330 which provides:

> In any action on a contract or lease . . . where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such

---

[8]We note that the court in *McGovern* stated that "if a borrower borrows for a legitimate business purpose of providing inventory for a sole proprietorship, and that business later fails, the borrower may be left with a *personal* obligation. A loan made to repay that obligation is not for a business purpose." *McGovern*, 59 Wn. App. at 732. This statement is clearly dicta and does not constitute the holding of the case. As stated in *Marashi, Brown,* and *Stevens v. Security Pac. Mortgage Corp.*, 53 Wn. App. 507, 768 P.2d 1007, *review denied*, 112 Wn.2d 1023 (1989), the important factor is the borrower's objective manifestations to the lender at the time of the loan. Here, the borrowers' objective manifestations were that the third loan, like the first and second, was for a business purpose.

contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

GAC points to provisions in both the promissory note and deed of trust executed in connection with the third loan as the contractual attorney fees provisions.[9] What GAC omits to discuss, however, is the interplay between RCW 4.84.330 and RCW 19.52.032. The latter statute provides in part:

If the debtor commences [a declaratory judgment] action and fails to establish usury, and if the court finds the action was frivolously commenced, the defendant or defendants may, in the court's discretion, recover reasonable attorney's fees from the debtor.

In *Thweatt v. Hommel*,[10] we recognized that at least an "arguable issue" existed that RCW 19.52.032 overrides contractual provisions under which a lender would ordinarily be entitled to attorney fees. Here, we hold that under well settled principles of statutory construction, the more specific statutory provisions concerning recovery of attorney fees in usury actions should govern a conflicting general statutory provision.[11] Consequently, because there was no finding that the Castronuevos' action was frivolous, the trial court was within its discretion to deny GAC's claim for attorney fees. On the same grounds, we deny GAC's request for attorney fees on appeal.

---

[9]The promissory note provides in part: "[I]f suit shall be brought to collect any of the principal or interest of this Note; the Maker promises to pay the Holder's reasonable attorney's fees in addition to all costs of collection, including but not limited to court costs. The Maker further promises to pay the Holder's reasonable attorney's fees . . . and costs incurred in connection with any judgment rendered by a court having jurisdiction over this matter."

The deed of trust provides in part: "The Grantor will pay all of the Beneficiary's and the Trustee's expenses incurred in any efforts to enforce any terms of this Deed of Trust, whether or not any suit is filed, including without limitation legal fees and disbursements, foreclosure costs and title charges."

[10]67 Wn. App. 135, 834 P.2d 1058, *review denied*, 120 Wn.2d 1016 (1992).

[11]*See Wilson Sporting Goods Co. v. Pedersen*, 76 Wn. App. 300, 306, 886 P.2d 203 (1994).

For the foregoing reasons, the trial court's decision in favor of GAC is affirmed, and GAC's request for attorney fees on appeal is denied.

BAKER, C.J., and ELLINGTON, J., concur.