[No. 18262-2-III. Division Three. August 17, 2000.]

CALVIN W. JANSEN, *Individually and as Personal Representative, Respondent,* v. NU-WEST, INC., *Appellant,* KENNETH D. BECKLEY, P.S., ET AL., *Respondents.*

*James A. Perkins* (of *Larson & Perkins, P.L.L.C.*), for appellant.

*Kenneth D. Beckley*, for respondents.

SWEENEY, J. — Loans made primarily for commercial purposes are exempt from the usury law. In this usury action, a jury determined that the loan was primarily for a noncommercial purpose and that the usury statute applied. However, while the factual circumstances of making a loan

are within the province of the jury, the ultimate determination of the primary purpose of the loan is a question of law. We hold that the determination of the loan's purpose was improperly submitted to the jury, and that the primary purpose of the loan here was commercial, as a matter of law. We therefore reverse the judgment and remand for consideration of statutory attorney fees.

## FACTS

Nu-West, Inc., is a Washington corporation engaged in commercial lending. Georg Frey is its president.

On April 16, 1993, Nu-West loaned $175,000 to Calvin Jansen. Mr. Jansen signed a promissory note with interest at 14 percent per annum, and 30 percent on default. The promissory note also declares that the purpose of the loan is exclusively commercial. Mr. Jansen represented that the purpose of the loan was "to take the land out of an existing foreclosure, and to enable him to develop . . . a residential subdivision."

The Nu-West loan was a third generation farm loan. In 1990, Mr. Jansen borrowed $60,000 from General Acceptance Corporation (GAC), a commercial lender. The GAC promissory note included a business purpose declaration. Nu-West arranged a private loan of $135,000 (the "Victor" loan) to pay off the GAC loan to avoid foreclosure by GAC. The April 1993 loan paid off the Victor loan.

This third loan was secured by a deed of trust on the farm property. Mr. Jansen made six interest payments, the last in September 1993, but paid nothing after that. Mr. Jansen was also in default because he had failed to pay insurance and taxes. Mr. Jansen was affiliated with Nu-West as a "finder" from 1994 to 1995. During this time, according to Mr. Jansen, Mr. Frey told him not to worry about the loan. Mr. Jansen relied on those assurances. Mr. Frey denies he promised to forbear from enforcing the note.

Procedural History. Nu-West started nonjudicial foreclosure proceedings. Notice of default finally issued on Decem-

ber 14, 1995. The trustee's sale was set for May 17, 1996. But on May 8 Mr. Jansen filed a complaint to quash the trustee's sale and for a declaration of the amount owed. Nu-West conceded the deed of trust was defective. It omitted statutory language that the land was not primarily used for agriculture. The court entered an order on May 28 quashing the trustee's sale.

Nu-West counterclaimed to *judicially* foreclose on the deed of trust as a mortgage. Nu-West alleged the business exception to the usury laws applied. Mr. Jansen did not reply because "no request was apparently made for the filing of a reply to the counterclaim."

In September 1996, Nu-West moved for summary judgment on that counterclaim. Nu-West supported its motion with Mr. Frey's declaration and documentation that the purpose of the loan was to save Mr. Jansen's property from foreclosure on previous loans—a business purpose. Mr. Frey declared that Mr. Jansen assured him that the loan would be used to pay off the previous debt and to further develop the property for sale. Mr. Jansen also made a written declaration of commercial purpose included in the promissory note.

Mr. Jansen's sole challenge to the motion concerned "a defect pertaining to the notice of procedure" and the nature of certain subsequent payments.

A hearing on the summary judgment motion was set for November 4, 1996, but repeatedly continued for further discovery.

On July 7, 1997, Nu-West again filed a motion for summary judgment. This time, Mr. Jansen filed a responding memorandum, reciting the well-established law that direct conflict between a borrower's written and oral statements concerning the purpose of a loan requires fact-finding by a jury. Mr. Jansen presented no evidence, however, that he made any conflicting statements to Mr. Frey at the time of the loan.

On August 14, 1997, the court granted Nu-West's sum-

mary judgment motion and issued a decree of foreclosure. The court concluded that Nu-West met its burden of establishing the business purpose exemption to the usury laws. It concluded the remaining issues were limited to the calculation of the amount of the debt and interest, credits and the fair market value of the farm. The order was entered September 22, 1997.

On July 2, *1998*, Mr. Jansen filed a "Reply" to Nu-West's June 10, *1996* counterclaim for judicial foreclosure and pleaded the affirmative defense of usury for the first time. After numerous continuances, a four-day jury trial was set for December 15, 1998.

Consistent with the summary judgment order, Nu-West filed a trial brief defining the issues as calculation of the amounts owed, interest, and upset price for the foreclosure sale. Nu-West argued that Mr. Jansen was estopped from asserting usury, based on (1) the court's prior judgment, (2) the parol evidence rule, and (3) equitable estoppel based on Mr. Jansen's prior allegation that the land was being farmed at the time of the loan. Mr. Jansen had taken the position during the deed of trust proceedings that the land was being farmed, and prevailed.

Mr. Jansen redefined the issue as whether the loan was for business purposes. The court rejected Nu-West's position and went forward with a jury trial on the single issue of the purpose of the loan. The jury returned a special verdict:

Question: WAS THE LOAN OF APRIL 16, 1993 PRIMARILY FOR AGRICULTURAL, COMMERCIAL, INVESTMENT, OR BUSINESS PURPOSES?

Answer: No.

The court entered judgment on the verdict, extinguished the debt, and awarded Mr. Jansen attorney fees. The court entered conclusions of law based on the jury verdict that the loan was not exempt from the usury laws.

Nu-West's motions for judgment notwithstanding the verdict and a new trial were denied.

## ANALYSIS

The determination of the purpose of the loan was improperly submitted to the jury for two reasons: the issue was barred by principles of res judicata, and the application of the business purpose exception to the usury law results in a conclusion of law.

### RES JUDICATA

Nu-West contends that the usury issue was resolved by the court's summary judgment in Nu-West's favor. Nu-West's counterclaim for judicial foreclosure specifically pleaded the business exception to the usury laws. And Mr. Frey's declaration addressed and extensively briefed the issue.

The court's summary judgment was necessarily based on a conclusion that the loan was for business purposes. All that remained was for the court to determine the amount owed. It was therefore error to submit the usury issue to the jury.

Mr. Jansen argues that the summary judgment did no more than to establish Nu-West's priority to the security interest and thereby allow judicial foreclosure to proceed. By reserving the issue of computation of the precise amount owed, he contends, the court left the door open for Mr. Jansen to come forward later with additional defenses.

The Superior Court Civil Rules require a reply to a counterclaim; it is not optional. CR 7(a). The reply must fairly meet the substance of any averment denied. CR 8(b). Failure to deny an averment in a counterclaim constitutes an admission. CR 8(d). Nu-West's averment of the business exception was therefore admitted at the time of the summary judgment. Mr. Jansen offers no authority to support his contention that defenses to a counterclaim are preserved without filing a reply unless the court asks for one. And we can find none.

The court here issued a memorandum opinion and sum-

mary judgment order establishing that Nu-West had satisfied its burden of proving the business exception to the usury statute. It resolved the question summarily because the allegation was unrefuted. A year later, Mr. Jansen simply filed a "Reply" to the counterclaim and relitigated the issue. A reply must be filed within 20 days. CR 12(a)(4). And while a motion for reconsideration (CR 59) might have resurrected the issue, none was filed here.

### USURY—A QUESTION OF FACT OR LAW?

Nu-West further argues that the usury issue should never have gone to the jury because the primary purpose of a loan, and therefore the applicability of RCW 19.52.080, is a conclusion of law, not a question of fact. Mr. Jansen disagrees and argues that, because the original GAC loan had been paid off and the balance of the proceeds was used for nonbusiness purposes, the jury's verdict is supported by the evidence.

■■ Standard of Review. We review de novo the purpose of a loan and the applicability of RCW 19.52.080. *Pacesetter Real Estate, Inc. v. Fasules*, 53 Wn. App. 463, 471-72, 767 P.2d 961 (1989).

To prevail on the defense of usury, a defendant must establish (1) a loan, (2) an understanding that the principal must be repaid, (3) the exaction of an unlawful interest rate, and (4) intent to violate the law. *Liebergesell v. Evans*, 93 Wn.2d 881, 887, 613 P.2d 1170 (1980). RCW 19.52.080 creates an exception to the usury laws for business and commercial loans. When a loan is usurious on its face, the burden is on the lender to show the business exception of RCW 19.52.080 applies. *Marashi v. Lannen*, 55 Wn. App. 820, 823, 780 P.2d 1341 (1989).

■ Whether the purpose of the loan was primarily business is established from the representations made by the borrower at the time of the loan. *Brown v. Giger*, 111 Wn.2d 76, 82, 757 P.2d 523 (1988); *Marashi*, 55 Wn. App. at 823. We focus on the purpose the borrower actually repre-

sented at the time, not what was written on the application. *Id.* at 826. And that is a factual question, determined by examining the circumstances surrounding the transaction. *Castronuevo v. General Acceptance Corp.*, 79 Wn. App. 747, 751-52, 905 P.2d 387 (1995); *McGovern v. Smith*, 59 Wn. App. 721, 731, 801 P.2d 250 (1990).

A question of fact arises if the borrower's oral representations contradict the written representations. Simply put, the jury decides whether the borrower told the lender something different than the written document represents. *Marashi*, 55 Wn. App. at 824 n.3; *Castronuevo*, 79 Wn. App. at 752.

When the borrower's oral representations are inconclusive, however, the written statements may be dispositive. *Marashi*, 55 Wn. App. at 824. The documentary evidence carries more weight than unsubstantiated claims of contrary oral representations. *Pacesetter*, 53 Wn. App. at 472 (citing *Brown*, 111 Wn.2d at 82). Lenders have a "right to rely on representations made in the contract setting based on a general duty to contract in good faith." *Id.* at 473-74 (citing *Liebergesell*, 93 Wn.2d at 889).

Similarly, we give persuasive significance to the fact that the funds were actually used for business purposes. *Id.* at 472-73.

If the purpose of a loan is to pay off a previous loan, the purpose of which was primarily business, the purpose of the second loan is also primarily business. *Castronuevo*, 79 Wn. App. at 753. And therefore, the original purpose clings to the transaction through as many generations of refinancing as the borrower undertakes.

Purpose at Time of Transaction Governs. The loan is not usurious if it was not usurious at its inception. This is so, even if the borrower subsequently discloses a noncommercial purpose. We characterize the loan based on the borrower's manifestations of intent at the time the parties entered into the loan contract. *Brown*, 111 Wn.2d at 82; *National Bank of Commerce v. Thomsen*, 80 Wn.2d 406, 410, 495 P.2d

332 (1972); *Thweatt v. Hommel*, 67 Wn. App. 135, 143, 834 P.2d 1058 (1992); *Aetna Fin. Co. v. Darwin*, 38 Wn. App. 921, 927, 691 P.2d 581 (1984). If a loan contract is not usurious at its inception, the borrower's subsequent conduct will not make it usurious. *Thweatt*, 67 Wn. App. at 143. It is immaterial that the borrower had a secret nonbusiness purpose. *Id.* at 146.

It is also immaterial that the borrower, once having the funds in hand, actually spent them on personal things. *Castronuevo*, 79 Wn. App. at 753 n.8 (citing *Marashi*, 55 Wn. App. 820). The fact that some of the funds were expended on a residence on the business property does not negate the primary commercial purpose of the loan. *Pacesetter*, 53 Wn. App. at 473. Mr. Jansen argues that we must consider postloan accounting. But this argument follows from his mistaken belief that events after the loan have some effect on whether it was usurious. They do not.

Jury Resolves Conflicting Testimony. A jury decides the factual question of what the parties understood the funds were going to be spent on. The court then must decide as a matter of law whether these proposed expenditures constitute business purposes. *Marashi*, 55 Wn. App. at 824 n.3 (citing *Pacesetter*, 53 Wn. App. at 471).

However, a borrower's contrary oral manifestations are relevant only where it appears the lender has "rigged" the written agreement to evade the usury laws. *Brown*, 111 Wn.2d at 83. In *Marashi*, for example, the borrowers asserted they disclosed to the lender's agent the true purpose of the funds, which was to pay off a personal loan and to remodel their home. *Marashi*, 55 Wn. App. at 821, 825. They claimed the lender told them to sign the papers stating a business purpose strictly as a formality. *Id.* at 822. The purpose of this written statement was to avoid the usury laws. *Id.* at 827. The agent testified the borrower told him he needed the funds as working capital for his business. This created a question of fact for the jury as to who was telling the truth. *Id.* at 826.

Nothing in this record suggests Nu-West rigged the loan

documents. Mr. Jansen produced no evidence that Nu-West was told the loan proceeds would be spent primarily on personal expenditures. Therefore, we determine as a question of law whether the "purpose" requirement of RCW 19.52.080 was satisfied. Just as the court appropriately did in the summary judgment proceeding.

█ Primarily, Not Exclusively. To satisfy the business purpose exception, it is sufficient that most of the funds were borrowed for business. The Legislature has relaxed the business exception over the years. Formerly, the loan had to be *exclusively* for business purposes. The statute was amended to include loans *primarily* for business purposes. *Brown*, 111 Wn.2d at 80.

Here, Mr. Jansen never disputed that the original GAC loan was for business purposes. Nor did he ever dispute that he used most of the money from both Nu-West loans to pay off previous business loans. So, even if he used some of the funds for other purposes, he did not rebut his own admission: he borrowed the money primarily to ward off foreclosure after he ran into difficulties with his previous loans.

█ Verdict Not Supported by the Record. The jury's verdict is not supported by substantial evidence for these same reasons. Taking at face value every factual assertion by Mr. Jansen, the only possible finding from the evidence was that Mr. Jansen represented to Nu-West, orally and in writing, that he wanted most of the money to pay off prior business loans. The court should have concluded consistently with its grant of summary judgment that the purpose of this loan was commercial, as a matter of law. The jury's special verdict is in reality an erroneous conclusion of law.

## ATTORNEY FEES

█ RCW 4.84.330 awards attorney fees authorized by contract. The loan agreement at issue provides attorney fees to the prevailing party in an action to enforce it. The usury statute, RCW 9.52.032, is complementary to and not

in conflict with RCW 4.84.330. *King v. Western United Assurance Co.*, 100 Wn. App. 556, 561, 997 P.2d 1007 (2000). Therefore, Nu-West is entitled to its fees and costs pursuant to RCW 4.84.330.

## CONCLUSION

The judgment of the trial court is reversed and the matter is remanded for the trial court's consideration of fees.

KURTZ, C.J., and BROWN, J., concur.

Reconsideration granted and opinion modified September 21, 2000.

Review denied at 143 Wn.2d 1006 (2001).