IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MATTHEW R. NOFFKE, a single individual,<br><br>     Appellant,<br><br>    v.<br><br>SUSAN KARSTEDT, in her individual capacity and as part of her marital estate; DON KARSTEDT, in his individual capacity and as part of his marital estate; MATTHEW LINK; and MCFERRAN LAW, P.S.,<br><br>     Respondents,<br><br>SHELTON FAMILY TRUST; MARLO DELANGE; VANDEBERG JOHNSON & GANDARA, LLP; and DOE DEFENDANTS 1 THROUGH 20,<br><br>     Defendants. | No. 85916-1-I<br><br>DIVISION ONE<br><br><br><br><br><br>UNPUBLISHED OPINION |

BOWMAN, J. — Matthew Noffke appeals the trial court's orders dismissing his Consumer Protection Act (CPA), chapter 19.86 RCW, claims against Susan and Don Karstedt, attorney Matthew Link, and McFerran Law PS and the resulting orders awarding attorney fees and costs. Noffke alleges the Karstedts per se violated the CPA by violating the Consumer Loan Act (CLA), chapter 31.04 RCW. He also alleges that Link violated the CPA by breaching his duty of good faith under the deeds of trust act (DTA), chapter 61.24 RCW. We affirm the trial court's order dismissing Noffke's CPA claim against Link and McFerran Law and award their attorney fees and costs on appeal. But we reverse the trial

court's order dismissing Noffke's CPA claims against the Karstedts and the order awarding them fees below and remand for further proceedings.

FACTS

Noffke owns and operates a residential construction business, Noffke's General Contracting and Homes LLC (NGCH). The Karstedts are real estate agents and investors who have been neighbors and friends of Noffke and his parents for more than 20 years.

In May 2014, Susan Karstedt's mother, Ruth Shelton, loaned Noffke $30,000 from the Shelton Family Trust (Trust) to buy vacant land in Lake Tapps. The parties secured the loan by a deed of trust against Noffke's Lake Tapps property. Noffke repaid the loan in August 2016.

In February 2017, Shelton loaned Noffke $125,000 from the Trust at 12 percent interest. The parties secured the loan with a deed of trust against the still-undeveloped Lake Tapps property. And they initialed an optional clause on the promissory note stating that Noffke "represents and warrants to [Shelton] that the sums represented by this Note are being used for business, investment or commercial purposes, and not for personal, family or household purposes."[1] The loan called for interest-only payments until July 2017 and payment in full by December 2017.

In early 2017, Noffke began building a home on the Lake Tapps property used to secure the loan. In July 2017, Noffke finished construction and moved into the completed home with his then-girlfriend and their two children.

---

[1] Noffke testified that he used the $125,000 only to purchase undeveloped lots for his business.

Noffke made interest-only payments on the February 2017 loan from March to September 2017, then a principal payment of $23,750 in September 2017. But he failed to timely pay the balance of the loan. So, in December 2017, Noffke and the Karstedts[2] refinanced the loan and executed a new promissory note for $129,610 at 12 percent interest.[3] The note again contained an initialed clause stating that Noffke would use the loan for only commercial purposes. And the parties again secured the loan with the Lake Tapps property, now Noffke's primary residence. The note called for interest-only payments until December 2018 when the balance was due in full. Noffke made only sporadic interest payments and did not timely pay the balance of the loan.

In February 2018, the Karstedts loaned $100,000 at 12 percent interest to Noffke's business, NGCH. The parties secured the loan with a house constructed by NGCH in Bonney Lake. The parties initialed a clause on the promissory note specifying that NGCH would use the loan for only commercial purposes. The note called for interest-only payments until July 12, 2018 when the balance was due. Noffke made two interest payments toward the loan and failed to timely pay the balance.

In July 2018, NGCH and the Karstedts agreed to refinance the February 2018 loan. They executed a new promissory note for $103,750 at 12 percent interest.[4] The parties again initialed a clause in the promissory note stating that NGCH would use the loan for only commercial purposes. The note called for

---

[2] Shelton died in early 2018, so the Karstedts took her place as the lenders.

[3] The amount reflects the unpaid balance of the February 2017 loan plus interest.

[4] The amount reflects the unpaid balance of the February 2018 loan plus interest.

interest-only payments until December 19, 2019 when the balance was due. Noffke made one interest-only payment toward the loan but again failed to timely pay the balance.

In July 2019, the Karstedts agreed to combine and refinance the unpaid balances of Noffke's December 2017 loan and NGCH's July 2018 loan. The parties executed a new promissory note in the amount of $196,227[5] at 12 percent interest. The note calls for interest-only payments until August 10, 2021 when the balance was due. The parties did not check the box on the note stating that the purpose of this loan was commercial. Noffke secured the loan with his primary residence.

Noffke made three interest-only payments on the July 2019 loan but began missing payments in January 2020. In September 2020, the Karstedts threatened to accelerate the note and foreclose on his home. Around the same time, the Karstedts hired Link and his firm, McFerran Law (collectively Link), as trustee to oversee the foreclosure process. Link began reviewing documents provided by the Karstedts and communicating with the parties in September 2020. Link issued Noffke a notice of default on January 20, 2021. Then, on February 26, 2021, he issued a notice of trustee's sale with a sale date of July 2, 2021.

On March 9, 2021, Noffke's lawyer emailed Link to "respectfully request that you immediately terminate the foreclosure process as the foreclosure is illegal." Noffke's lawyer explained that the Karstedts violated the CLA by making

---

[5] Noffke disputes whether this is an accurate reflection of the total loan amount, but that issue is not before us on appeal.

an unlicensed commercial loan to Noffke secured by his primary residence.  On March 19, 2021, Link responded that he received the email and was completing his review of the matter.  That evening, Noffke's attorney emailed Link a copy of a complaint against the Karstedts and a motion for an injunction and temporary restraining order.  Then, on March 22, 2021, Noffke filed his complaint suing the Karstedts, alleging wrongful foreclosure, trustee misconduct, unjust enrichment, violation of the CPA, and intentional infliction of emotional distress.  A week later on March 29, 2021, Link notified Noffke's attorney that he had completed his review of the documents and would be "issuing and recording a cancellation of [the] trustee's sale."[6]

Noffke then hired a new attorney, who filed an amended complaint on April 6, 2022, adding Link as a defendant.[7]  The amended complaint alleged intentional and negligent misrepresentation against all the defendants, per se violation of the CPA based on a violation of the CLA against the Karstedts, a general violation of the CPA against all defendants, and a per se violation of the CPA based on a violation of the usury act, chapter 19.52 RCW, against the Karstedts.

---

[6] After Link cancelled the sale, the Karstedts retained attorney Marlo DeLange of Vandeberg Johnson and Gandara PS (collectively DeLange) to complete the foreclosure.  DeLange issued a new notice of default on December 14, 2021.  Soon after, Noffke's attorneys called DeLange to dispute the principal amount, interest, and fees owed under the July 2019 loan.  Noffke's attorneys agreed to provide an accounting but never did.  Still, DeLange did not issue a notice of trustee's sale.

[7] The complaint also named the Trust and DeLange.  But Noffke never served the Trust and it did not appear in the proceedings below, and Noffke and DeLange settled their claims in November 2022, so the Trust and DeLange are not parties on appeal.

In October 2022, the Karstedts and Link moved for summary judgment on Noffke's claims. The Karstedts did not dispute that they violated the CLA. Instead, they argued Noffke suffered no injury under the CPA. According to the Karstedts, Noffke admitted in his amended complaint that the July 2019 loan was for personal purposes and, under those circumstances, the CLA provides a refund of only third-party fees. And because the Karstedts charged no third-party fees, Noffke suffered no injury. Link argued that Noffke's CPA claim against him failed because "there is no expert testimony that Link in anyway violated an applicable standard of care."

In July 2022, the court dismissed all claims against Link except the CPA claim under CR 12(c). Then, on November 18, 2022, the court granted the motions for summary judgment and dismissed all claims against the Karstedts and Link with prejudice.

Noffke appeals.

ANALYSIS

Noffke argues the trial court erred by dismissing his CPA claims against the Karstedts and Link.[8]

We review orders on summary judgment de novo, engaging in the same inquiry as the trial court. *Kim v. Lakeside Adult Fam. Home*, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). "Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment

---

[8] Noffke does not appeal dismissal of his per se CPA claim against the Karstedts based on violation of the usury act or his negligent and intentional misrepresentation claims against the defendants.

6

as a matter of law." *Rublee v. Carrier Corp.*, 192 Wn.2d 190, 198, 428 P.3d 1207 (2018); CR 56(c). We consider facts and inferences in a light most favorable to the nonmoving party. *Rublee*, 192 Wn.2d at 199. A defendant can prevail on a motion for summary judgment by challenging the plaintiff's ability to establish an essential element of a cause of action. *See Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). The defendant bears the initial burden of showing a lack of evidence. *Id.* at 225 n.1. The burden then shifts to the plaintiff to establish the essential elements of their claim. *Id.* at 225. If the plaintiff fails to do so, the defendant is entitled to summary judgment. *Id.*

The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. To succeed on a CPA claim, a plaintiff must establish (1) an unfair or deceptive act (2) in trade or commerce (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered. *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 834-35, 355 P.3d 1100 (2015). A plaintiff can establish the first two elements by showing the alleged act amounts to a per se unfair trade practice. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785-86, 719 P.2d 531 (1986). A per se unfair trade practice exists when a defendant violates a statute that the legislature has found to be "an unfair or deceptive act in trade or commerce." *Id.* at 786.

7

1. <u>CPA Claims against the Karstedts</u>

Noffke argues the trial court erred by dismissing his per se CPA claim against the Karstedts because some evidence supports finding that the Karstedts violated the CLA, causing him injury to his business or property.[9]

Under the CLA, a lender must generally obtain a license or a license waiver before making any loan. RCW 31.04.025. A lender must comply with the CLA when it makes a residential mortgage loan secured by a deed of trust. *See generally* RCW 31.04.025, .035; *see also* RCW 31.04.015(24). But the CLA does not apply to "a loan primarily for business, commercial, or agricultural purposes *unless* the loan is secured by a lien on the borrower's primary dwelling." RCW 31.04.025(2)(e).[10] A "residential mortgage loan" is "any loan primarily for personal, family, or household use that is secured by a mortgage, deed of trust, or other consensual security interest on a dwelling." RCW 31.04.015(24). A nonresidential—or commercial—loan is a loan not for "personal" purposes "that is secured by a[n] . . . interest on a dwelling," like a deed of trust. *Accord* RCW 31.04.015(24).

The remedies available for a violation of the CLA differ depending on the purpose of the loan. RCW 31.04.035(2). If an unlicensed lender makes a residential mortgage loan in violation of the CLA, the lender must refund the borrower any "[n]onthird-party fees charged in connection with the origination of the residential mortgage loan . . . , excluding interest charges." RCW

---

[9] Noffke also appeals dismissal of his general CPA claim against the Karstedts, but that claim is also based on a violation of the CLA.

[10] Emphasis added.

31.04.035(2)(a). And if the loan is made for commercial purposes, an unlicensed lender must return all "[f]ees or interest charged in the making of [the] nonresidential loan . . . to the borrower." RCW 31.04.035(2)(b). A violation of the CLA establishes the first three elements of a plaintiff's CPA claim. *See* RCW 31.04.208 (an unfair or deceptive act or practice in the conduct of trade or commerce affecting public interest).

The Karstedts do not dispute they violated the CLA by issuing the July 2019 loan without a license. Instead, they argue that Noffke cannot show an injury to his business or property because the purpose of the loan was for personal use and he did not incur any third-party fees. Noffke maintains there is at least a dispute of material fact as to whether the purpose of the loan was personal or commercial. We agree with Noffke.

A loan's purpose "is principally established by the representations the borrower makes to the lender at the time the loan is procured." *Brown v. Giger*, 111 Wn.2d 76, 82, 757 P.2d 523 (1988). This is an issue of fact to be answered after examining the circumstances of the transaction. *Castronuevo v. Gen. Acceptance Corp.*, 79 Wn. App. 747, 751-52, 905 P.2d 387 (1995). The lender's purpose for the loan, which is almost always a commercial purpose, is irrelevant. *Aetna Fin. Co. v. Darwin*, 38 Wn. App. 921, 928, 691 P.2d 581 (1984). Instead, we focus on the purpose the borrower "actually represented at the time." *Jansen v. Nu-W., Inc.*, 102 Wn. App. 432, 439-40, 6 P.3d 98 (2000).

When the borrower's representations are inconclusive, we look to written statements in the loan documents. *Marashi v. Lannen*, 55 Wn. App. 820, 824,

780 P.2d 1341 (1989). But when other evidence contradicts the written representations, it creates a question of fact. *Jansen*, 102 Wn. App. at 440. Still, while the borrower's representations on the purpose of a loan is a question of fact, the court decides as a matter of law whether that purpose amounts to a business or personal use. *Marashi*, 55 Wn. App. at 824 n.3. Finally, when the parties refinance a loan, the purpose of the loan remains the same as the original loan. *See Castronuevo*, 79 Wn. App. at 752-53.

At issue are the two loans Noffke obtained from the Trust and the Karstedts. First, Shelton loaned Noffke $125,000 in February 2017. Noffke's declaration implies that the loan would be used for his business. But the declaration is silent about whether he told Shelton that would be the loan's purpose. So, we look to the loan's documentation, which shows that the parties agreed the proceeds were "being used for business, investment or commercial purposes, and not for personal, family or household purposes." That purpose did not change when Noffke and the Karstedts refinanced the loan in December 2017. *See Castronuevo*, 79 Wn. App. at 752-53.

The Karstedts then loaned NGCH $100,000 in February 2018. That loan was made to Noffke's business, suggesting its purpose was commercial. But again, Noffke's declaration is silent on his representations to the Karstedts at the time of the loan. Because the representations at the time of the loan are unclear, we again look to the loan documents, which show that the loan was made for commercial purposes. And, like the prior loan, the purpose remained commercial when the parties refinanced the loan in July 2018.

Then, in July 2019, Noffke and the Karstedts agreed to refinance and consolidate the outstanding balance of both loans into a single loan. Unlike the documentation for the original loans, the parties did not check the box on the promissory note stating that the July 2019 loan was made for commercial purposes. Still, refinancing the commercial loans did not change their original stated purpose. So, Noffke produced evidence showing that the purpose of the July 2019 loan was commercial.

Even so, the Karstedts assert they are entitled to summary judgment because Noffke made a "judicial admission" in his amended complaint that the purpose of the loan was personal. "Judicial admissions" are " 'formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.' " *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (quoting *In re Fordson Eng'g Corp.*, 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982)).

Here, in the amended complaint, Noffke's lawyer stated:

> Throughout the litigation in this case, the Karstedt Defendants have contested Mr. Noffke's assertion that the loans were commercial because he used the funds exclusively for business purposes. He admits that nothing in the loan documentation supports his belief that the loan was commercial, but since the Karstedt Defendants want to characterize the loan as "personal[,]" Mr. Noffke will defer to them on that issue. This means that the usury statute, RCW 19.52.80, applies and precludes interest at any rate over **12** [**percent**] per annum.

But an admission by an attorney may bind a client only if it is distinct, formal, and made for the express purpose of dispensing with the formal proof of some fact at trial. *Thurston County v. W. Wash. Growth Mgmt. Hearings Bd.*,

164 Wn.2d 329, 354 n.14, 190 P.3d 38 (2008). And CR 8(e)(2) permits a party to make inconsistent or alternate claims in a pleading. " '[I]n light of the liberal policy embodied in Rule 8(e)(2), . . . a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case.' " *Port of Seattle v. Lexington Ins. Co.*, 111 Wn. App. 901, 919, 48 P.3d 334 (2002) (quoting *Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985)).

Counsel's statement in the amended complaint is more like a statement in support of an alternative claim under CR 8(e)(2) than a distinct and formal statement made for the express purpose of dispensing with formal proof at trial about the purpose of the loan. The statement is not distinct because it is enmeshed in a pleading that repeatedly alleges that the purposes of the loans were commercial, not personal,[11] and that the Karstedts violated the CPA by securing a commercial loan with Noffke's primary residence, entitling him to a return of interest.[12] And the statement was not made to dispense with formal proof of a fact because it does not amount to a statement of fact. The facts are that the loan documents contain clauses stating that the proceeds of the original February 2017 and 2018 loans were for commercial purposes. Noffke's lawyer's

---

[11] For example, it alleges that Noffke had to take out loans to "keep his business operating," that he previously borrowed money from Shelton for business purposes, and that he intended to use the February 2017 loan proceeds for "business operations."

[12] Noffke also claimed that the July 2019 loan violated the CLA, which prohibits the Karstedts from recovering interest. *See* RCW 31.04.035(2)(b) (fees or interest charged by an unlicensed lender in the making of a nonresidential loan must be refunded to the borrower).

deferral to the characterization of those facts as "personal" relates to a legal conclusion. *See Marashi*, 55 Wn. App. at 824 n.3.

Because evidence supports finding that the purpose of the July 2019 loan was commercial, we reverse the trial court's order summarily dismissing Noffke's CPA claims against the Karstedts and remand for further proceedings.[13]

2.  CPA Claim against Link

Noffke argues the trial court erred by dismissing his CPA claim against Link for violating his statutory duty of good faith as a trustee under the DTA. We disagree.

A claim under the CPA based on violations of the DTA must meet the same requirements applicable to any other CPA claim. *Lyons v. U.S. Bank Nat'l Ass'n*, 181 Wn.2d 775, 785, 336 P.3d 1142 (2014). "Whether undisputed conduct is unfair or deceptive is a question of law, not a question of fact." *Id.* at 786. But where questions of fact remain as to whether conduct violates a statutory obligation, a fact finder must resolve those material questions. *Id.* at 786-87. Still, we may resolve a factual question as a matter of law when reasonable minds could come to only one conclusion. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 924, 296 P.3d 860 (2013).

The DTA imposes a duty of good faith on a foreclosure trustee to the borrower, beneficiary, and grantor. RCW 61.24.010(4). "[U]nder our statutory system, a trustee is not merely an agent for the lender or the lender's successors. Trustees have obligations to all of the parties to the deed, including

---

[13] Because we reverse the order of dismissal, we also reverse the trial court's order awarding the Karstedts' their attorney fees and costs.

the homeowner." *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 93, 285 P.3d 34 (2012). This duty requires the trustee to remain impartial and protect the interests of all parties. *Lyons*, 181 Wn.2d at 787.

"A foreclosure trustee must 'adequately inform' itself regarding the purported beneficiary's right to foreclose, including, at a minimum, a 'cursory investigation' to adhere to its duty of good faith." *Lyons*, 181 Wn.2d at 787 (quoting *Walker v. Quality Loan Serv. Corp.*, 176 Wn. App. 294, 309-10, 308 P.3d 716 (2013)).

> A trustee does not need to summarily accept a borrower's side of the story or instantly submit to a borrower's demands. But a trustee must treat both sides equally and investigate possible issues using its independent judgment to adhere to its duty of good faith.

*Id.* A trustee's breach of good faith can support a CPA claim. *Patrick v. Wells Fargo Bank, N.A.*, 196 Wn. App. 398, 412, 385 P.3d 165 (2016).

Here, quoting *Lyons*, 181 Wn.2d at 787-89,[14] Noffke argues he presented evidence that "Link violated his duty of good faith and committed unfair and deceptive acts by failing to 'adequately inform' himself regarding the Karstedts' right to foreclose" and by "failing to investigate 'conflicting information regarding the[ ] [Karstedts'] right to initiate foreclosure.' " But the record does not support his argument.

The record shows that sometime in late 2020, the Karstedts hired Link to conduct a nonjudicial foreclosure sale. Link began reviewing documents provided by the Karstedts and communicating with the parties in September

---

[14] Alterations in original, internal quotation marks omitted.

2020. He then issued a notice of default on January 20, 2021 and a notice of trustee's sale on February 26, 2021 with a sale date of July 2, 2021.

On March 9, 2021, Noffke's lawyer emailed Link to "respectfully request that you immediately terminate the [illegal] foreclosure process" because the Karstedts violated the CLA by making an unlicensed commercial loan secured by Noffke's primary residence. Ten days later on March 19, 2021, Link told Noffke's attorney that he was still reviewing the matter. Noffke's attorney then emailed Link a copy of the soon-to-be-filed complaint suing the Karstedts and a motion for an injunction and temporary restraining order. On March 29, 2021, Link completed his review and notified Noffke's attorney that he would cancel the trustee's sale.

The undisputed facts show that Link informed himself about the Karstedts' right to foreclose by reviewing the loan documents. And Link timely investigated Noffke's allegations that the loans were unlawful. Indeed, Link cancelled the foreclosure sale less than three weeks after learning of Noffke's allegations. So, reasonable minds could reach only one conclusion—Link did not violate his duty of good faith as foreclosure trustee.

We affirm the trial court's order dismissing Noffke's CPA claim against Link and the resulting order awarding him attorney fees and costs.[15]

---

[15] Because we affirm the trial court's order, we do not address Link's argument that expert testimony must support an allegation that a foreclosure trustee violated the duty of good faith under the DTA or Noffke's argument that the costs he incurred investigating Link's conduct amount to an injury under the CPA.

15

3. Appellate Attorney Fees and Costs

Karstedt and Link request attorney fees and costs on appeal under RAP 18.1.

Generally, when a statute authorizes fees in the trial court, those fees are also available on appeal. *SEIU Healthcare Nw. Training P'ship v. Evergreen Freedom Found.*, 5 Wn. App. 2d 496, 515, 427 P.3d 688 (2018). RCW 4.84.330 authorizes the award of attorney fees and costs to the prevailing party in an action enforcing the provisions of a contract if the contract specifically provides for attorney fees.

The Karstedts request attorney fees and costs under a provision in the July 2019 promissory note that states, "If Maker or Holder sues to enforce this Note or obtain a declaration of its rights hereunder, the prevailing party in any such proceeding shall be entitled to recover its reasonable attorneys' fees and costs incurred in the proceeding." Because the Karstedts are not the prevailing parties on appeal, we reject their request for fees.

Link asks for fees under a provision in the deed of trust securing the July 2019 loan. Section 5 of the deed provides that Noffke, as grantor, shall "pay all costs, fees, and expenses in connection with this Deed of Trust, including the expenses of the Trustee incurred in enforcing the obligation secured by this Deed of Trust . . . and attorney's fees actually incurred as provided by statute." Because Link, as trustee, is the prevailing party in an action connected with the enforcement of the deed of trust, we award him attorney fees and costs on appeal subject to compliance with RAP 18.1.

In sum, we affirm the trial court's order dismissing Noffke's CPA claim against Link and the award of fees and award Link attorney fees and costs on appeal. But we reverse the trial court's order dismissing Noffke's CPA claims against the Karstedts and their award of fees and remand for further proceedings.

Brennan, J

WE CONCUR:

Feldman, J.          Smith, C.J.